U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT - 1 2020
CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ROBERT GENE GEOTCHA JR., §
§
Petitioner, §
§
v. § No. 4:19-CV-995-A
§
BOBBY LUMPKIN, Director,[1] §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to

28 U.S.C. § 2254 filed by petitioner, Robert Gene Geotcha Jr., a

state prisoner confined in the Correctional Institutions Division

of the Texas Department of Criminal Justice, against Bobby

Lumpkin, director of that division, respondent. After having

considered the pleadings, state court records, and relief sought

by petitioner, the court has concluded that the petition should

be denied.

### I. FACTUAL AND PROCEDURAL HISTORY

In June 2014 petitioner was indicted in Tarrant County,

Texas, Case Nos. 1364883D and 1364887D, on two counts of

aggravated assault with a deadly weapon, a knife. (01Clerk's R.

---

[1]Bobby Lumpkin has replaced Lorie Davis as the director of the
Correctional Institutions Division of the Texas Department of Criminal
Justice. Thus, he is automatically substituted as the party respondent. Fed.
R. Civ. P. 25(d).

6, doc. 21-2; 02Clerk's R. 5, doc. 21-3.[2]) The cases were tried

together. The state court of appeals summarized the background

facts as follows:

> At trial, [petitioner] pled not guilty. The jury
> heard evidence that one spring evening, [petitioner],
> who was living with his then-girlfriend [Wanda]
> Jackson, forced his way into her apartment after an
> argument led to her telling him "that the
> relationship was getting too stressful, and he needed
> to just go . . . stay with his mom." Once inside the
> apartment, [petitioner] pulled a knife from his
> backpack and stabbed Jackson in the neck. The commotion
> caught the attention of Jackson's daughter, [Alquisha]
> Knox, who was one of several family members present in
> the apartment. Knox attempted to assist Jackson by
> hitting [petitioner], who eventually used the knife to
> stab Knox in the head.
>
> Jackson fled the apartment and sought help from
> her next door neighbors. Although she quickly entered
> the neighbors' apartment, [petitioner] followed her
> inside, where he choked her, dragged her out of the
> apartment, and threw her down a flight of stairs into
> the apartment complex's parking lot. [Petitioner]
> continued to attack Jackson in the parking lot by
> punching her face. As [petitioner] attacked Jackson, he
> "kept repeating that . . . he was a killer."
>
> Alex Dvorak, one of Jackson's neighbors who had
> never met either her or [petitioner] prior to this
> incident, heard [petitioner] tell Jackson that he was
> going to kill her. Dvorak left his apartment to see
> what was happening outside and saw [petitioner] pushing
> Jackson down the stairs. After shouting at [petitioner]
> to stop the commotion and threatening to call the
> police, Dvorak returned to his apartment to retrieve
> his handgun.
>
> Dvorak returned to the scene armed with his
> handgun and saw [petitioner] positioning himself on top
> of Jackson and striking her. After Dvorak commanded

---

[2]"01Clerk's R." refers to the clerk's record in Case No. 1364883D;
"02Clerk's R." refers to the clerk's records in Case No. 1364887D.

[petitioner] to get off Jackson, [petitioner] brandished a large kitchen knife and asked Dvorak, "Do you want some, too?" Dvorak pulled out his gun and got into a shooting stance, warning [petitioner] not to come near him. [Petitioner] stepped away from Jackson, and she immediately ran toward Dvorak. Noticing that Jackson was bleeding from a cut on her neck, Dvorak escorted her back to his apartment to call the police. [Petitioner] followed them to the hallway leading to Dvorak's apartment and told him, "I know where you live now" and "I have guns, too" before running away from the apartment complex. Jackson told Dvorak that she had been cut.

A paramedic went to the apartment complex, responding to a call of a "priority one stabbing." He saw blood soaking the front of Knox's clothing and estimated that she had lost about half a liter of blood. Knox told the paramedic that she had been stabbed in the side of her head. The paramedic noticed that Jackson had a cut toward the bottom of her neck and also had defense wounds on her arms. Jackson told the paramedic that she had been assaulted with a knife and had been thrown down the stairs. A police officer also arrived at the scene and saw puncture wounds on Jackson's neck and on Knox's temple. Another officer went to the complex and noticed, at several locations within it, red stains consistent with the appearance of blood. Jackson and Knox were transported to a hospital and were treated for multiple injuries that they said had been caused, in part, by [petitioner] stabbing them. Several days later, the police found [petitioner hiding in a home between mattresses] and arrested [petitioner]; he did not have any visible wounds.

Jackson testified at trial, but Knox did not. After the parties finished presenting evidence and arguments, [petitioner] asked for the jury to be charged on the lesser-included offense of simple assault causing bodily injury as to Jackson. The trial court denied that request.

The jury found [petitioner] guilty of both charges. [Petitioner pleaded true to the repeat-offender notice in the indictments and] [t]he trial court sentenced him to sixty-five years' confinement on each charge with the sentences running concurrently.

(Mem. Op. 2-5, doc. 21-14 (footnotes omitted).)

Petitioner's convictions were affirmed on appeal and the
Texas Court of Criminal Appeals refused his petition for
discretionary review. (Electronic R., doc. 21-1.) Thereafter,
petitioner filed two state habeas-corpus applications, one for
each conviction, which were denied by the Texas Court of Criminal
Appeals without written order on the findings of the trial court.
(Action Taken, doc. 21-24.) This federal petition for habeas-
corpus relief followed.

## II. ISSUES

In seven grounds, petitioner raises the following claims,
verbatim:

   (1)  Denied Equal Protection and Due Process and Course
of Law by the failure to disclose the Trial
Transcripts;

   (2)  Petitioner was deprived of his Federal
Constitutional Right to confrontation in violation
of his Sixth and Fourteenth Amendments;

   (3)  Trial counsels [sic] representation fell below the
prevailing standard of professional norms by
cumulative errors on Ineffective Assistance of
Counsel;

   (4)  Trial counsels [sic] representation fell below the
prevailing standard of professional norms by
cumulative errors on Ineffective Assistance of
Counsel;

   (5)  Trial counsel's representation fell below the
prevailing standard of professional norms by
cumulative errors on Ineffective Assistance of
Counsel;

   (6)  Trial counsel [sic] representation fell below the

4

prevailing standard of professional norms by
cumulative errors on Ineffective Assistance of
Counsel; and

(7) Trial court erroneously admitted prejudicial
evidence that did constitute an abuse of
discretion.

(Am. Pet. 6-7, 11,[3] doc. 17.)

### III.  RULE 5 STATEMENT

Respondent believes that petitioner has sufficiently
exhausted his claims in state court and that the petition is not
subject to the successive-petition bar or untimely. (Resp't's
Answer 7, doc. 20.)

### IV. LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened
standard of review provided for in the Anti-Terrorism and
Effective Death Penalty Act. 28 U.S.C. § 2254. Under the Act, a
writ of habeas corpus should be granted only if a state court
arrives at a decision that is contrary to or an unreasonable
application of clearly established federal law as established by
the United States Supreme Court or that is based on an
unreasonable determination of the facts in light of the record
before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v.
Richter*, 562 U.S. 86, 100 (2011). This standard is difficult to
meet and "stops short of imposing a complete bar on federal court

---

[3]Because an additional page, which is unpaginated, is attached to the
amended form petition, the pagination in the ECF header is used.

relitigation of claims already rejected in state proceedings."
*Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great
deference to a state court's factual findings. *Hill v. Johnson,*
210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides
that a determination of a factual issue made by a state court
shall be presumed to be correct. It is the petitioner's burden to
rebut this presumption by clear and convincing evidence. 28
U.S.C. § 2254(e)(1).

Further, when the most recent state court to consider a
constitutional issue provides a "reasoned opinion," a federal
habeas-corpus court must "review[] the specific reasons given by
the state court and defer[] to those reasons if they are
reasonable." *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188,
1191-92 (2018). Under those circumstances, a federal court should
"'look through' the unexplained decision to the last related
state-court decision providing" particular reasons, both legal
and factual, "presume that the unexplained decision adopted the
same reasoning," and give appropriate deference to that decision.
*Id.*

## V. DISCUSSION

### A. Free Copy of Trial Transcripts

Under his first ground, petitioner asserts that his due
process and equal protection rights were violated with respect to

6

the denial of his records request in preparation of his "writ of habeas." (Am. Pet. 6, doc. 17; Pet'r's Mem. 2-3, doc. 13.) However, the state is not "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial." *Jackson v. Estelle,* 672 F.2d 505, 506 (5th Cir. 1982). Likewise, it is well established that an indigent inmate does not have a federally-protected right to a free copy of his transcript or other court records to search for possible error in order to file a petition for collateral relief. *See Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir.1975) (citations omitted); *Colbert v. Beto,* 439 F.2d 1130, 1131 (5th Cir. 1971). Petitioner is not entitled to relief under his first ground.

### B. Right of Confrontation

Under his second ground, petitioner claims that his rights under the Confrontation Clause were violated because he was denied his right to cross-examine Knox and by admission of hearsay testimony from Jackson and the paramedic regarding statements made to them by Knox "that she was intentionally and knowingly stabbed by Petitioner, and that Petitioner caused her bodily pain." (Am. Pet. 6, doc. 17; Pet'r's Mem. 3-11, doc. 13.) In the last reasoned opinion regarding the issue, the state appellate court addressed the claim as follows:

> [Petitioner] contends that his right to
> confrontation under the Sixth Amendment was violated

7

with respect to his conviction for aggravated assault against Knox. [Petitioner] presents three arguments related to this point. First, he argues that the State's failure to call Knox as a witness or notify trial counsel before trial of her absence constituted a general violation of the Confrontation Clause. Second, he appears to argue that the admission of a statement made by Knox to Jackson constituted a violation of the Confrontation Clause. Third, he argues that the admission of a statement made by Knox to the attending paramedic who was in the process of treating her wounds constituted a violation of the Confrontation Clause. The State argues that [petitioner] has failed to preserve this point for our review.

**Preservation**

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. These preservation requirements apply to constitutional objections, including objections under the Confrontation Clause.

The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. At trial, appellant urged only one objection under the Confrontation Clause. This objection was made during the testimony of the paramedic regarding statements made to him by Knox while he was treating her wounds. The following colloquy occurred:

[STATE:]  The young one with . . . the wound to her head, did she tell you what happened to her?

[WITNESS:]  She did.

[STATE:]  What did she say?

[DEFENSE COUNSEL]:  Your Honor, we object to hearsay.

8

THE COURT: Sustained.

[STATE]: Your Honor, may I respond?

THE COURT: Yes, go ahead.

[STATE]: . . . [The paramedic] just stated that he takes a history from the patient for the purposes of medical diagnosis and treatment. And [he said that] he uses that information to determine what course of action to take. So, therefore, I think it's an exception to the hearsay rule.

THE COURT: Let me hear from the defense.

[DEFENSE COUNSEL]: Your Honor, we would also object under the confrontation clause that when we're discussing Alquisha Knox, she's not been called as a witness. So we have not had an opportunity to cross-examine her.

THE COURT: Okay. All right. I'm going to change that ruling. Overrule.

We conclude that these objections that distinctly and specifically contained hearsay and confrontation grounds preserved [petitioner]'s constitutional argument with regard to the admissibility of the testimony of the paramedic. But [petitioner] did not object under the Confrontation Clause or the Sixth Amendment at any other time in the trial court. Thus, we conclude that his constitutional contentions regarding the State's decisions to not call Knox as a witness or notify trial counsel of her absence as well as the admissibility of testimony by Jackson, each raised for the first time on appeal, are forfeited.

**Confrontation Clause analysis**

We now turn to whether the trial court erred by overruling [petitioner]'s Confrontation Clause objection to the paramedic's testimony about what Knox told him. In all state and federal criminal prosecutions, the accused has the right "to be confronted with the witnesses against him." In *Crawford*

9

[*v. Washington,* 541 U.S. 36 (2004)], the Supreme Court drew a distinction between testimonial and nontestimonial statements, holding that the Confrontation Clause bars the admission of an out-of-court testimonial statement of a declarant who does not testify at trial unless the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant.

"[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" Whether a statement is testimonial under the Confrontation Clause is a question of law that we review de novo. When an out-of-court statement is made by the declarant to a medical professional primarily for the purpose of diagnosis and treatment rather than to develop facts for later litigation, it is not testimonial.

The record indicates that Knox's statements to the paramedic were made for the purpose of medical diagnosis and treatment, not in anticipation of furthering a future criminal prosecution, rendering them nontestimonial and not within the scope of the Confrontation Clause. The following exchange occurred during the paramedic's testimony:

> [STATE:]   [W]hen you're treating patients, do you ask them questions related to what happened to them?
>
> [WITNESS:]   Yes, I do.
>
> [STATE:]   Why do you do that?
>
> [WITNESS:]   To get a better understanding of what kind of injury that they got, how it was delivered, and how . . . severe the injury would be.
>
> [STATE:]   Do you use that information to treat or . . . to diagnose any kind of medical issues that they may have?
>
> [WITNESS:]   Yes, I do.

Because Knox's statements to the paramedic were

made by a patient to an attending medical professional
for the purposes of medical diagnosis and treatment and
because the record does not indicate that the
statements were made under circumstances where Knox or
the paramedic contemplated that they would be used at a
later trial, we conclude that they were not testimonial
for the purposes of invoking the requirements of the
Confrontation Clause. Therefore, we conclude that the
trial court did not err by admitting the statements.

(Mem. Op. 5-12, doc. 21-14 (footnotes omitted) (citations
omitted).)

The state appellate court expressly found that petitioner's
claim as it relates to the State's failure to call Knox as a
witness as well as the admissibility of Knox's out-of-court
statements to Jackson did not comport with the objections made in
the trial court and were, thus, forfeited. Under the procedural-
default doctrine, federal courts are precluded from federal
habeas review where the last state court to consider the claim
raised by the petitioner based its denial of relief on an
independent and adequate state-law procedural ground. *Coleman v.
Thompson,* 501 U.S. 722, 729-30 (1991). Clearly, the state court's
decision rested on a state-law procedural default independent of
petitioner's claim. And, Texas's preservation rule is firmly
established and regularly applied. *See Foster v. Johnson,* 293
F.3d 766, 790 (5th Cir. 2002); *Darden v. State,* 629 S.W.2d 46, 51
(Tex. Crim. App. 1982). Thus, the procedural default in state
court precludes federal habeas review of the claim. *Wainwright v.
Sykes,* 433 U.S. 72, 87, (1977); *Ogan v. Cockrell,* 297 F.3d 349,

356 (5th Cir. 2002). A petitioner may overcome a state procedural bar by demonstrating either cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice—*i.e.,* that he is actually innocent of the offense for which he was convicted. *Coleman,* 501 U.S. at 750. Such showing not having been made by petitioner, the claim is procedurally barred from this court's review.

Further, the state court's determination of petitioner's claim as it relates to the admissibility of Knox's out-of-court statements to the paramedic is not contrary to or an unreasonable application of *Crawford.* Statements made for the purposes of obtaining medical treatment during an ongoing emergency are not testimonial under *Crawford. See Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 312 n.2 (2009); *Davis v. Washington,* 547 U.S. 813, 828 (2006); *United States v. Santos,* 589 F.3d 759, 763 (5th Cir. 2009). Petitioner is not entitled to relief under his second ground.

### C. Ineffective Assistance of Counsel

Under his third, fourth, fifth, and sixth grounds, petitioner claims that he received ineffective assistance of trial counsel in various respects. A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387,

12

393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688
(1984); *Anders v. California*, 386 U.S. 738, 744 (1967). To
establish ineffective assistance of counsel, a petitioner must
show (1) that counsel's performance fell below an objective
standard of reasonableness, and (2) that but for counsel's
deficient performance the result of the proceeding would have
been different. *Strickland*, 466 U.S. at 688. In applying this
test, a court must indulge a strong presumption that counsel's
conduct fell within the wide range of reasonable professional
assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's
performance must be highly deferential and every effort must be
made to eliminate the distorting effects of hindsight. *Id.* at
689.

Ineffective-assistance-of-counsel claims are considered
mixed questions of law and fact and, therefore, are analyzed
under the "unreasonable application" standard of § 2254(d)(1).
*See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where
the state court has adjudicated the ineffective-assistance claims
on the merits, this court must review petitioner's claims under
the "doubly deferential" standards of both *Strickland* and §
2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such
cases, the "pivotal question" for this court is not "whether
defense counsel's performance fell below *Strickland*'s standard";
it is "whether the state court's application of the *Strickland*

13

standard was unreasonable." *Richter,* 562 U.S. at 101.

Petitioner asserts that counsel was ineffective by (1) failing to object to the testimony of Jackson "bolstering" Knox's case; (2) failing to object to the court's charge and request an instruction on the lesser-included offense of assault causing bodily injury; (3) failing to properly preserve error to any of the hearsay testimony that occurred while Jackson was on the stand; and (4) failing to object to Knox's absence or make any attempt to compel her presence at trial. (Am. Pet. 7, 11, doc. 17; Pet'r's Mem. 11-25, doc. 13.)

Petitioner raised his claims in his state habeas application, which was referred to a magistrate for hearing, factual findings, and conclusions of law. (SHR02[4] 121, doc. 21-26.) Toward that end, the magistrate judge ordered an affidavit from trial counsel, Kara Carreras, who responded to petitioner's allegations in an affidavit as follows (all spelling, grammatical, and/or punctuation errors are in the original):

> After reviewing the case notes, trial transcripts, offense reports, jury trial notes, trial notebook, and appeal . . ., the following are the facts as I recall:
>
> During the course of representing [petitioner], he was convinced that the victims in the case would not show up to testify against him. [Petitioner] further claimed that he was being attacked by the two victims and his stabbing both of them was in self-defense.

---

[4]"SHR01" and "SHR02" refer to petitioner's state habeas proceedings in WR-91,124-01 and WR-91,124-02, respectively.

Regarding the allegations alleged in ground two if
[sic] [petitioner]'s affidavit that I failed to object
to hearsay statements at trial. Those facts are
incorrect. After a review of portions of the trial
transcript, I determined that the statements made by
Wanda Jackson were not hearsay. Wanda Jackson testified
to what she **personally** saw happening during the
confrontation between her, [petitioner] and Alquisha
Knox. Ms. Jackson's testimony did not amount to
hearsay, therefore, there was no legal basis for a
hearsay objection to be made. Ms. Jackson testified to
personally seeing [petitioner] stab her daughter, Ms.
Knox, in the head.

      . . .

[Petitioner] insisted that he was only defending
himself against attacks by Ms. Jackson and Ms. Knox.
Part of the defense strategy representing [petitioner]
included the fact that Ms. Knox "incited" her mother,
Ms. Jackson into becoming angry that Ms. Jackson was
the initial aggressor of the fight. It was necessary
for defense counsel to cross Ms. Jackson on the reasons
why she came running out of the bathroom to confront
[petitioner]. The testimony regarding Ms. Knox telling
her mother that [petitioner] was leaving to go steal
something was needed to lay the groundwork for the
self-defense.

Regarding ground four of [petitioner]'s complaint,
there was no factual basis laid during the trial to
have made the request of a lesser-included for Ms. Knox
1364883D. Facts were not brought into evidence during
the trial to allege that [petitioner] committed an
assault bodily injury. The only facts brought out were
those that others personally witnessed [petitioner]
stabbing Ms. Knox in the head.

(Id at 131-32 (emphasis in original).)

Based on counsel's affidavit and the documentary record, the
magistrate entered the following relevant factual findings:

16.  Ms. Carreras has been licensed as an attorney in
the State of Texas since 2001.

      . . .

15

18. Trial counsel was qualified to represent [petitioner] in this case.

19. Ms. Carreras' affidavit is credible and supported by the record.

20. [Petitioner] alleges trial counsel's representation fell below the prevailing standard such that cumulative errors resulted in ineffective assistance of counsel, specifically that trial counsel failed to object to the testimony of Jackson.

21. [Petitioner] alleges trial counsel's representation fell below the prevailing standard such that cumulative errors resulted in ineffective assistance of counsel.

22. [Petitioner] alleges trial counsel failed to compel Knox's attendance at trial, or object to her absence.

23. [Petitioner] alleges that trial counsel erred in admitting Jackson's statements regarding the injuries sustained by Knox and that [petitioner] was the one that stabbed Knox.

24. Trial counsel reviewed the trial transcript and determined that the alleged hearsay statements made by Jackson were not hearsay, as the statements relayed what Jackson personally saw.

25. Trial counsel reviewed the trial transcript and determined that the statements made by Knox to the attending paramedic were admissible, non-testimonial statements made for the purpose of medical diagnosis.

26. The trial court did not admit any testimonial statements made by Knox.

27. In addition, eliciting Jackson's testimony regarding statements from Knox to Jackson were part of a deliberate trial strategy by trial counsel to establish [petitioner]'s self-defense claim that Knox incited Jackson into starting a fight with [petitioner].

28. Knox's hospital records were admitted at trial, containing the same information regarding her injuries as Jackson's and the paramedic's testimony.

29. 911 phone calls were admitted at trial describing that one of the victims (Knox) had been stabbed in the head, and naming [petitioner] as the responsible party.

. . .

33. [Petitioner] alleges trial counsel's representation fell below the prevailing standard such that cumulative errors resulted in ineffective assistance of counsel, specifically that trial counsel failed to object to the court's charge and failed to request a lesser-included offense instruction.

34. On appeal, [petitioner] argued that the trial court erred by failing to include a jury instruction on the lesser-included offense of assault on Jackson.

35. Trial counsel determined that there was no factual basis to support a request for a lesser-included offense.

(Id. at 135-36 (record citations omitted).)

Based on those factual findings, and applying the *Strickland* standard and relevant state law, the magistrate judge entered the following legal conclusions:

18. Trial counsel elicited testimony from Jackson regarding statements made by Knox as part of a sound trial strategy to prove [petitioner]'s self-defense claim.

19. An attorney is not ineffective for failing to make futile objections or filing frivolous motions.

20. Trial counsel was not ineffective for failing to object to the admission of testimony from the paramedic or Jackson because the statements were

17

not inadmissible hearsay or in violation of the Confrontation Clause.

21. A complainant's absence from trial does not violate the Confrontation Clause if no testimonial statements from the complainant are admitted.

22. [Petitioner] was not harmed by Knox's absence at trial because no testimonial statements from Knox were admitted.

23. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

24. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

25. [Petitioner] has failed to show a reasonable likelihood exists that the outcome of the trial would have been different had trial counsel objected to the paramedic or Jackson's testimony.

26. [Petitioner] was not harmed by Knox's absence at trial because there was additional overwhelming evidence at trial to show that [petitioner] assaulted Knox by stabbing her in the head with a knife.

27. [Petitioner] has failed to show a reasonable likelihood exists that the outcome of the trial would have been different had trial counsel objected to the absence of Knox at trial.

28. [Petitioner] has not shown a reasonable probability that, but for any alleged acts of misconduct, the result of his prosecution and sentencing would have been different.

29.  [Petitioner] has failed to prove that trial
     counsel's conduct fell below an objective standard
     of reasonableness.

30.  [Petitioner] has failed to prove that trial
     counsel's cumulative errors resulted in
     ineffective assistance of counsel.

     . . .

33.  The Court of Appeals held that the record
     contained no evidence that would have permitted
     the jury to rationally find that [petitioner] was
     only guilty of assault rather than aggravated
     assault on Jackson.

34.  The Court of Appeals held that the trial court did
     not err in denying [petitioner]'s request for a
     lesser-included offense instruction.

35.  [Petitioner] has failed to prove that he received
     ineffective assistance of trial counsel.

(Id. at 139-41 (citations omitted).)

The state habeas court adopted the magistrate's actions and
the Texas Court of Criminal Appeals denied relief on the trial
court's findings. (Id. at 157.)

Petitioner has failed to present clear and convincing
evidence to refute the state court's factual findings; thus,
deferring to those findings, the state court's application of
*Strickland* was not objectively unreasonable. Petitioner's claims
are conclusory, with no legal and/or evidentiary basis, involve
matters of state law, involve strategic and tactical decisions
made by counsel, or would have required counsel to make frivolous
objections or arguments, all of which generally do not entitle a
state petitioner to federal habeas relief. *See, e.g., Strickland,*

19

460 U.S. at 689 (holding strategic decisions by counsel are
virtually unchallengeable and generally do not provide a basis
for postconviction relief on the grounds of ineffective
assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255
(5th Cir. 2002) (concluding that counsel is not required to make
futile motions or objections); *Creel v. Johnson,* 162 F.3d 385,
390-91 (5th Cir. 1998) (providing that whether a lesser-included-
offense instruction in non-capital cases is warranted does not
raise a constitutional issue; thus a court defers to state court
interpretation of its law for whether instruction is warranted);
*Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (providing
"[m]ere conclusory allegations in support of a claim of
ineffective assistance of counsel are insufficient to raise a
constitutional issue"). Because petitioner fails to establish
separate acts of deficient performance, it necessarily follows
that relief is not warranted under a cumulative *Strickland*
analysis. The court further notes that even if petitioner could
demonstrate defective assistance based on one or more of his
claims, in view of the overwhelming evidence of his guilt, he
cannot make a showing of *Strickland* prejudice. Petitioner is not
entitled to relief under his third, fourth, fifth, or sixth
grounds.

### D. Trial Court Error

Under his seventh ground, petitioner claims that the trial

20

court erred by overruling counsel's hearsay objection during the
punishment phase to admission of unauthenticated texts from
petitioner to Knox, the subject of a previously granted pretrial
motion in limine, one of which stated, "Fuck you. It feels good
to do that. I had nowhere to go you dumb bitch. Goodbye. I don't
hit women. I either shoot or stab a bitch always remember that
about me." (Am. Pet. 11, doc. 17; Pet'r's Mem. 26-28, doc. 13;
Reporter's R., vol. 3, 12-13, doc. 21-6 & vol. 5, 24, doc. 21-8.)

    Although raised in petitioner's state habeas applications,
the state court found that the claim was not sufficiently
developed therein and did not address the merits of the claim.
(SHR01 31, 141, doc. 21-25; SHR02 32, 137, doc. 12-26.) However,
by virtue of his memorandum in support of the applications, he
clarifies the claim. (SHR01 68-70; doc. 21-25; SHR02 67-68, doc.
21-26.) Assuming, without deciding, that a claim raised only in a
supporting memorandum is sufficient to satisfy the exhaustion
requirement under § 2254(b)(1)(A), the claim lacks merit.
Petitioner acknowledged that he sent some text messages from his
cell phone to Knox following the event. (Reporter's R., vol. 5,
22-23, doc. 21-8.) This admission in addition to "the content
and/or context" of the particular text messages were sufficient
to create an inference supporting the conclusion that petitioner
was in fact the purported author who sent them, even though he
testified that he did not remember sending the specific message

referenced above. *See Butler v. State,* 459 S.W.3d 595, 600-02
(Tex. Crim. App. 2015). Further, even if the trial court erred by
allowing the state to question him regarding the text messages,
petitioner cannot establish that the error had a substantial or
injurious effect or influence in determining the trial court's
sentences given his lengthy criminal history and past violence
toward other women with whom he was involved, including an
incident very similar to the facts of this case. (Reporter's R.,
vol. 5, 15-16, 25-30, doc. 21-8.) *See Brecht v. Abrahamson,* 507
U.s. 619, 623-24 (1993). Petitioner is not entitled to relief
under his seventh ground.

 For the reasons discussed,

 The court ORDERS the petition of petitioner for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,
denied. The court further ORDERS that a certificate of
appealability be, and is hereby, denied, as petitioner has not
made a substantial showing of the denial of a constitutional
right or that the court's procedural ruling are debatable or
wrong.

 SIGNED October _____, 2020.

          _____

        JOHN MCBRYDE
        UNITED STATES DISTRICT JUDGE